IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

SAIFULLAH PARACHA,
Detainee ISN1094,
Guantanamo Bay Naval Station,
Guantanamo Bay, Cuba,

        Petitioner,

        v.        Case No. 21-cv-

Hon. JOSEPH R. BIDEN Jr.,
1600 Pennsylvania Avenue NW,
Washington, D.C. 20500;

Hon. LLOYD J. AUSTIN III,
Secretary of Defense
1000 Defense Pentagon
Washington, D.C. 20301-1000;

Hon. ANTHONY J. BLINKEN,
Secretary of State,
2201 C Street NW,
Washington, D.C. 20520;

and
Rear Admiral EDWARD B. CASHMAN,
Commander, Joint Task Force-GTMO,
Guantanamo Bay Naval Station,
Guantanamo, Cuba,
        Respondents.

**PETITION FOR HABEAS CORPUS AND OTHER RELIEF**

Petitioner, complaining of Respondents, alleges and states:

THE PARTIES

1. Petitioner SAIFULLAH PARACHA (hereafter, "Paracha") is a citizen and national of The Islamic Republic of Pakistan who holds a visa as a permanent resident

of the United States, a "green card."

2. Respondents are officials, agents, and employees of the United States sued in their official capacities. All references hereafter to the actions and omissions of "Respondents" includes the actions and omissions of their predecessors in office and of all other agents, employees, and officers of the United States, current and past, as may be relevant.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under the habeas corpus statute, 28 U.S.C. § 2241 et seq.; the mandamus statute, 28 U.S.C. §1361; the All Writs Act, 28 U.S.C. § 1651; the declaratory judgment statutes, 28 U.S.C. § 2201, 2202; the Federal question statute, 28 U.S.C. § 1331; the clause of the United States Constitution guaranteeing habeas corpus from suspension, Article I, Section 9, clause 2, and the clause prohibiting bills of attainder, Article I, Section 9, clause 3; the amendments to the Constitution, especially the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments; and numerous other provisions.

4. This is a petition for the writ of habeas corpus; an action in the nature of mandamus to compel officers and employees of the United States, or agencies thereof, to perform duties owed petitioner; a civil action to review policies, regulations, or ruling of executive agencies; a civil action arising under the Constitution, laws, or treaties of the United States; and an action under all constitutional, statutory, and other grounds that may give this Court authority to review Mr. Paracha's confinement, treatment, and right to communicate with others.

5. Venue lies in the District of Columbia under the mandamus statute and

other provisions, particularly 28 U.S.C. § 1391(b) and (e). Respondents, or some of them, acting within the District of Columbia, have failed and refused to give notice to several committees of Congress of petitioner's approval for release and have caused and are causing petitioner's continued confinement. Respondents have the authority and ability to release petitioner from confinement. Complete relief can be effected within the District of Columbia.

## THE FACTS

6. On July 6, 2003, Mr. Paracha was unlawfully seized by agents of the United States. He has since that date been held by Respondents in facilities under the control of the United States and under the control of Respondents.

7. Since mid-September 2004 Petitioner has been held against his will by Respondents at Guantanamo Naval Base, Guantanamo, Cuba, under color of law based on the Authorization for Use of Military Force (hereafter, the AUMF), Pub. L. 107-40, 115 Stat. 224, 50 U.S.C. § 1541 note, which Respondents maintain gives them authority to hold persons who allegedly gave assistance to certain persons or organizations.

**The Prior Ruling**

8. In 2004 Petitioner filed in the U.S. District Court for the District of Columbia a petition for habeas corpus, 2004-cv-02022-PLF. Eventually on January 23, 2020, this resulted in a 69-page opinion by Hon. Paul L. Friedman, *Paracha v. Trump,* 453 F. Supp.3d 168 (D.C. 2020), exonerating Petitioner of any personal involvement in any terrorist activity but advancing the admittedly novel theory that Petitioner could be held under the Authorization for the Use of Military Force if it

were shown more likely than not that he had violated any criminal statutes penalizing knowing assistance to any terrorist organizations. Judge Friedman denied Petitioner's habeas corpus under that theory because of colorable evidence that Petitioner had, in the years before his seizure in 2003, given financial and personal assistance to various individuals he allegedly knew to be connected to a terrorist organization based in Afghanistan. That ruling, and the novel theory on which it rests, is pending on appeal in the D.C. Circuit, No. 20-5039.

9. Several developments since January 23, 2020, have intervened to require Petitioner's release. Because there has never been any proper ground to detain Petitioner, and he was in fact and in law entitled to release as of January 23, 2020, these new developments do not make Petitioner's appeal from the prior ruling moot. The new developments do provide legitimate grounds for this second proceeding for habeas corpus, mandamus, and other relief. To wit:

**The Use of Military Force Has Ended**

10. On or about August 31, 2021, all United States and allied military forces and personnel had left Afghanistan. Respondent Biden, in his capacity as Commander in Chief and chief executive of the United States, announced on August 31, 2021, that all military operations under the Authorization for Use of Military Force and ceased. He said: "Last night in Kabul the United States ended twenty years of war in Afghanistan, the longest war in American history," and "The war in Afghanistan is now over."

**Petitioner Has Been Cleared for Release**

11. On or about May 13, 2021, acting "pursuant to Executive Order 13567,"

the Periodic Review Board, after consideration by the Review Committee consisting of the Secretaries of State, Defense, and Homeland Security, the Attorney General, the Director of National Intelligence, and the Chairman of the Joint Chiefs of Staff determined that "continuing law of war detention is no longer necessary" in the case of petitioner, Saifullah Paracha, ISN 1094.

COUNT ONE:
WHATEVER AUTHORITY UNDER THE AUTHORIZATION FOR THE USE OF MILITARY FORCE RESPONDENTS HAD FOR PETITIONER'S CONFINEMENT ENDED ON AUGUST 31, 2021

Petitioner repeats and incorporates herein all the above allegations and further states:

12. The August 31, 2021, statement by Respondent Biden was the action of the President and the executive branch terminating all authority to hold Petitioner thereafter. That announcement is binding on this honorable Court.

COUNT TWO:
WHATEVER AUTHORITY UNDER THE AUTHORIZATION FOR THE USE OF MILITARY FORCE RESPONDENTS HAD FOR PETITIONER'S CONFINEMENT ENDED ON MAY 13, 2021

Petitioner repeats and incorporates herein all the above allegations and further states:

13. On January 22, 2009, respondent Biden's predecessor President Barack Obama issued **Executive Order 13492.** That Order envisioned the repatriation or release of many of the persons confined like petitioner at Guantanamo Bay. Sec. 4(c)(2) of that order provided that the "Secretary of Defense, Secretary of State, and, as appropriate, other Review participants shall work to effect promptly the release or transfer of all individuals [held at Guantanamo] for whom release or transfer is possible."

14. On March 7, 2011, President Barack Obama created a Periodic Review Board (PRB) to examine the cases of individual persons held under the AUMF to determine if each of them should continue to be held. This Board was created by **Executive Order 13567**, under the President's "continued, discretionary exercise of existing detention authority in individual cases." E.O. 13567, sec. 1(b).

15. On January 30, 2018, President Donald J. Trump issued **Executive Order 13823**, which reaffirmed E.O. 13567 and continued the authority of the Periodic Review Board to examine individual cases "to determine whether continued law of war detention is necessary to protect against a significant threat to the security of the United States." E.O. 13823, sec. 2(e). That order also modified the earlier E.O. 13492 by revoking section 3 thereof, which had envisioned the complete closure of the prison at Guantanamo within one year. President Trump left in place the rest of that order, including the obligation quoted above to effect promptly releases and transfers where possible.

16. The May 13, 2021, finding and action of the Periodic Review Board declaring that the "continuing law of war detention is no longer necessary" in the case of Petitioner was the action of the President and the executive branch terminating all authority to hold Petitioner thereafter. That finding and action is binding on this honorable Court.

COUNT THREE:'
RESPONDENTS ARE OBLIGED TO FACILITATE PETITIONER'S DEPARTURE FROM GUANTANAMO BAY AND HIS RETURN TO PAKISTAN

Petitioner repeats and incorporates herein all the above allegations and further states:

17. The May 13, 2021, action of the Periodic Review Board triggered the obligation under Executive Order 13492, Sec. 4(c)(2), that the "Secretary of Defense, Secretary of State, and, as appropriate, other Review participants shall work to effect promptly the release or transfer of all individuals for whom release or transfer is possible." In the case of Saifullah Paracha that obligation included only ministerial acts such as giving notice to Congressional committees if required by law and arranging transportation to Pakistan if petitioner and his family were unable to do so on their own. For a time after his confinement under the AUMF was terminated, on information and belief Respondents confined Petitioner under the claim that he was an unauthorized person on a military base awaiting transportation to a suitable destination. For thirty days of that time, on information and belief Respondents confined Petitioner under the claimed necessity to notify committees of Congress of Petitioner's release. In addition to denying the legality of any of this confinement, Petitioner alleges that the reasonable times that could have been allowed for any such colorable reasons for his confinement have long ago expired.

18. By a letter dated June 30, 2021, an aide to the Prime Minister of the Islamic Republic of Pakistan wrote to the respondent Secretary of State Anthony J. Blinken indicating that the "practicalities of returning [Paracha] to Pakistan" should be discussed with the Pakistani Ambassador in Washington "so that we can resolve this issue as expeditiously as possible." Petitioner denies knowledge or information as to whether such discussions, or any other genuine discussions, have taken place. On information and belief, the government of Pakistan has consistently throughout Petitioner's imprisonment asked for his release and stands ready to send a plane to take petitioner back to Pakistan, or to arrange his return by some other means.

19. Statutes require that the Secretary of Defense give notice to various congressional committees at least thirty days before anyone is released from the prison at Guantanamo. Section 8101 of Pub. L. 115-245, 132 Stat. 3024, continues in effect Section 1034 of the National Defense Appropriations Act for Fiscal Year 2016, Pub. L. 114-92, 129 Stat. 969-971, which spells out the notice that the Secretary of Defense must give to the following committees: Committee of Armed Services, Committee on Foreign Affairs, Committee on Appropriations, and the Permanent Select Committee on Intelligence in the House of Representatives, and the Committee of Armed Services, Committee on Foreign Relations, Committee on Appropriations, and the Select Committee on Intelligence in the Senate.

20. The giving of such a notice is a ministerial act and is an obligation laid on the Secretary of Defense that he may not neglect. Respondent the Secretary of Defense has failed and refused since May 13, 2021, and is continuing to fail and to refuse, to give such notices to the appropriate committees of congress. The failure to give such notices has delayed and will continue to delay petitioner's release.

COUNT FOUR:
ANY STATUTORY RESTRICTIONS ON PETITIONER'S RELEASE OR DEPARTURE FROM GUANTANAMO BAY ARE INVALID AS BILLS OF ATTAINDER

Petitioner repeats and incorporates herein all the above allegations and further states:

21. Section 8101 of Pub. L. 115-245, 132 Stat. 3024, continues in effect Section 1034 of the National Defense Appropriations Act for Fiscal Year 2016, Pub. L. 114-92, 129 Stat. 969-971, which purports to require that the Secretary of Defense not release any person held as a prisoner at Guantanamo Bay for at least thirty days

after giving notice to the appropriate congressional committees. This restriction on the actions of the executive branch is void and unenforceable as a bill of attainder.

COUNT FIVE
PETITIONER'S RELEASE FROM IMPRISONMENT IS NOT DEPENDENT ON HIS RETURN TO PAKISTAN OR ANY OTHER PLANS FOR HIM AFTER HIS RELEASE

Petitioner repeats and incorporates herein all the above allegations and further states:

22. Petitioner is a citizen and national of the Islamic Republic of Pakistan, which has asked for his repatriation and is ready, willing, and able to accept him as a returning citizen. (Petitioner's son, Uzair Paracha, was in early 2020 released from a prison in the mainland United States and returned to Pakistan, where the Pakistani authorities admitted him to the country and did not subject him to continued physical restraint.) Petitioner, moreover, holds an unrevoked green card, a permanent resident's visa allowing him to enter into and remain in the United States.

23. Respondents, on information and belief, have denied Petitioner's release until they conclude unspecified negotiations and agreements with unspecified authorities, Pakistani or otherwise, or other unspecified negotiations and agreements. This denial, even if only a temporary delay, is much to Petitioner's harm and detriment.

24. Petitioner requests and demands the relief provided in the habeas corpus statute, 28 U.S.C. § 2243, that Respondents be commanded to *habeas corpus*, that is, have the body, and "shall be required to produce at the hearing the body of the person detained. . . . [whereupon] the court shall summarily hear and determine the facts, and dispose of the matter as law and just require." That is,

Petitioner demands and requests that Respondents shall produce Petitioner at the U.S. District Court for the District of Columbia, 333 Constitution Avenue NW, Washington, D.C., whereupon Petitioner shall be released forthwith.

COUNT SIX

RESPONDENTS MAY NOT RESTRICT PETITIONER'S TRAVEL AFTER HIS RELEASE BY PLACING HIM ON A "NO FLY LIST" OR DEMANDING THAT OTHER NATIONS AND AIRLINES RESTRICT PETITIONER'S TRAVEL

Petitioner repeats and incorporates herein all the above allegations and further states:

25. 49 U.S.C. § 44903(j)(2)(C)(v) purports to require that all detainees released from the prison at Guantanamo be placed on the No Fly List and prohibited from air travel, unless a presidential exemption be granted.

26. This provision is invalid as a bill of attainder and a deprivation without due process of the right to travel.

27. On information and belief Respondents are relying on the above statute in their refusal to release Petitioner, as he would have no way of departing from the military base at Guantanamo or returning to Pakistan as long as he is on the No Fly List.

28. Petitioner's listing on the No Fly List will prevent his resumption of ordinary business and personal activities after his release. It is and will continue to be a great harm and detriment to him.

WHEREFORE PETITIONER RESPECTFULLY ASKS THAT THIS HONORABLE COURT:

1. Order Respondents under 28 U.S.C. § 2243 to respond within three days to this petition;

2. Issue the writ of habeas corpus freeing Petitioner from all confinement;

3. Issue the writ of habeas corpus under 28 U.S.C. § 2243, ordering that Petitioner be brought to the U.S. Courthouse at 333 Constitution Avenue NW, Washington, D.C., on a date and time certain, unless he has previously been released from all confinement, and that he be released then and there from all further confinement,

4. Issue the writ of mandamus directing Respondent the Secretary of Defense to give notice of the intention to release Petitioner to the required committees of Congress;

5. Declare invalid and prohibit further compliance with the statute requiring notice to various congressional committees before anyone is released from the prison at Guantanamo;

6. Order Petitioner removed from the "No Fly List";

7. Order Respondents to accept from any nation or individual, or group of individuals, any practicable offer to transport Petitioner from Guantanamo Bay, Cuba, to Pakistan, and to grant reasonable access to the military base at Guantanamo for that purpose; and

8. Grant such further relief as law and justice may require.

I DECLARE UNDER PENALTY OF PERJURY that the foregoing is true and correct to the best of my knowledge, information, and belief.

*Gaillard T. Hunt*

_____   Date: October 2, 2021


Respectfully submitted,                    Washington, D.C., October 2, 2021

*Gaillard T. Hunt*

_____
GAILLARD T. HUNT
    Attorney for Petitioner
(D.C. Bar No. 089375)
10705 Tenbrook Drive
Silver Spring, Maryland 20901
(Not admitted in Maryland)
301-530-2807
gthunt@mdo.net
(Fax: 301-564-6059)