IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SAIFULLAH PARACHA, ) <br> ) <br> *Petitioner,* ) <br> ) <br> v. ) Case No. 1:21-cv-2567-PLF <br> ) <br> JOSEPH R. BIDEN, JR., *et al.*, ) <br> ) <br> *Respondents.* ) <br> ) | |

**RESPONDENTS' OPPOSITION TO PETITIONER'S
MOTION FOR AN ORDER TO SHOW CAUSE RE DISCOVERY;
MOTION FOR A MORE DEFINITE STATEMENT; AND
RENEWED MOTION FOR DISCOVERY**

Pursuant to the Court's December 30, 2021, order prescribing further proceedings in this case, ECF No. 19, Respondents Joseph R. Biden, Jr., Lloyd Austin III, Antony Blinken, and Edward Cashman, hereby file their opposition to Petitioner's Motion for Order to Show Cause re Discovery, ECF No. 11 ("Mot. for Discovery"), Motion for More Definite Statement, ECF No. 12 ("Mot. for Statement"), and Renewed Motion for Discovery, ECF No. 13 ("Ren. Mot. for Discovery").

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.    PETITIONER'S MOTIONS FOR DISCOVERY SHOULD BE DENIED ....................................2

    A.    Discovery is Premature at this Juncture ........................................................2

    B.    The Discovery Sought is Outside the Scope of the Amended Case Management Order that is Typically Entered in These Cases ........................4

        1.    The scope of discovery ..............................................................5

        2.    Petitioner's requests exceed this scope ....................................6

    C.    Petitioner's Renewed Motion for Discovery Should be Denied ....................9

II.    PETITIONER'S MOTION FOR A MORE DEFINITE STATEMENT SHOULD BE DENIED ..... 11

CONCLUSION .................................................................................................................... 12

## INTRODUCTION

On October 25, 2021, Respondents filed their response to Mr. Paracha's Petition for Habeas Corpus and Other Relief. *See* Resp., ECF No. 10. Respondents pointed out that this Court has already found Petitioner legally detainable, *id.* at 1 (citing *Paracha v. Trump*, 453 F. Supp. 3d 168 (D.D.C. 2020) ("*Paracha I*"), and that the legality of Petitioner's detention was not undermined either by the President's August 31, 2021, statement (*id.* at 5-6) or the May 13, 2021, determination by the Periodic Review Board ("PRB") that Petitioner was eligible for transfer (*id.* at 6-7). Respondents also argued that Petitioner's claims to "other relief" are barred by statute and should—for that and other reasons—be dismissed at the outset. *Id.* at 7-18. Respondents have since moved to dismiss those claims. *See* Mot. to Dismiss, ECF No. 22.

Before engaging directly with those arguments, Petitioner filed the pending motions. He recognized in passing that "Respondents have raised complicated jurisdictional arguments about many aspects of the pending petition," Mot. for Discovery 3, but he has made little effort to rebut those arguments. He suggests that Respondents have not disputed the "core claim" before the Court, even though Respondents have demonstrated that Petitioner remains legally detained. Resp. 5-7 ("Petitioner Remains Lawfully Detained"); *see also* Resp. to Supp. Pet., ECF No. 21.

Petitioner's motions for discovery should be denied because he fails to demonstrate that any of the discovery is appropriate. Petitioner's proposed discovery pertains to his non-*habeas* claims to "other relief," and because those claims are jurisdictionally barred, Petitioner cannot seek discovery related to those claims. In addition, Petitioner's proposals exceed the scope of discovery authorized by the case-management order entered in Guantanamo *habeas* cases, including *Paracha I*, and seek to obtain information that is well outside the scope of the Court's jurisdiction. At a minimum, the discovery Petitioner seeks would be premature until the Court decides whether to dismiss at the threshold the claims for "other relief."

Petitioner's motion for a more definite statement fares no better. Respondents have

1

explained precisely why Petitioner remains legally detained and why neither of Petitioner's "core claim[s]," Mot. for Discovery 3, changes that analysis. *See* Resp. 5-7; Resp. to Supp. Pet.

All three of Petitioner's motions should be denied.

## ARGUMENT

### I. PETITIONER'S MOTIONS FOR DISCOVERY SHOULD BE DENIED.

#### A. Discovery is Premature at this Juncture.

Petitioner has argued that "[i]t is time" for the Court to enable discovery in this case. Mot. for Discovery 3. But shortly after his petition was filed, Respondents argued that Petitioner's claims to "other relief" (Counts III-VI) are barred by statute and should therefore be dismissed at the outset. *See* Resp. 7-8. Pursuant to the Court's scheduling order, Respondents have recently renewed those arguments. *See* Mot. to Dismiss, ECF No. 22. In addition to being barred by statute, these claims fail for other threshold reasons, such as the lack of standing or a cause of action, and that they have been squarely rejected by the D.C. Circuit and other courts in this district—including this Court. *See generally id.*

Less than two days after Respondents made these arguments in their initial response, and without addressing (let alone rebutting) any of those arguments, Petitioner proposed to seek discovery into ten topics:

> 1. Name and contact information for all officials in Enforcement and Removal Operations, Immigration and Customs Enforcement, who are tasked with physical deportation or removal of aliens to Pakistan.
>
> 2. The present location and condition of Saifullah Paracha's Pakistani passport.
>
> 3. Contact information for the present custodian of Saifullah Paracha's Pakistani passport and all other items taken from him after his seizure in Bangkok in 2003.
>
> 4. An inventory of all items taken from Saifullah Paracha after his seizure in Bangkok in 2003, with the present location and custodian

>of each item.
>
>5. All documents concerning the return of Uzair Paracha to Pakistan after his release from the Bureau of Prisons.
>
>6. The security agreement concerning Uzair Paracha agreed to by the government of Pakistan.
>
>7. Names and contact information for each person in the Department of State assigned to work on carrying out Petitioner Saifullah Paracha's release.
>
>8. Names and contact information for each person in the Department of Defense assigned to work on carrying out Petitioner's release.
>
>9. Names and contact information for each person in the Department of Defense assigned to work on drafting the notice of Petitioner's release to be sent to various Congressional committees.
>
>10. Names and contact information for each employee or representative of the United States in Islamabad or elsewhere assigned to negotiate with the government of Pakistan the return of prisoners and security agreements about returned prisoners.

Mot. for Discovery, Ex. 3 (10/27/2021 meet-and-confer email).[1] The next day, Petitioner filed his Motion for an Order to Show Cause re Discovery.

None of Petitioner's proposed topics relates to either of his supplemental *habeas* claims, *viz.* that the government's detention authority expired either after the President's statement that "[t]he war in Afghanistan is now over" (Count I), or upon the Periodic Review Board's ("PRB's") decision that Petitioner is eligible for transfer from United States custody (Count II). That is, none of the discovery sought would inform this Court's analysis of the only appropriate question in this case: whether Petitioner is legally detainable.

Instead, all ten topics relate to Petitioner's claims to "other relief," such as his plea that the Court expedite his transfer from Guantanamo Bay to Pakistan (Count III).[2] Essentially, Petitioner's

---

[1] Respondents do not necessarily concede the factual premises of these requests, and merely set them forth verbatim as expressed by Petitioner's counsel.

[2] Petitioner's motion only confirms that he seeks extra-*habeas* relief: "This petition was filed not just because Paracha is entitled to the substantive relief *but also in the hope that it might be learned*

3

counsel wishes to inspect and participate in the diplomatic and national-security process by which the government is working to transfer Mr. Paracha. But, as detailed in Respondents' Motion to Dismiss, all claims to "other relief" are categorically barred. Because the Court has not yet ruled on those arguments, Petitioner's proposed discovery is premature. And because the government's arguments are likely to succeed—they have been accepted by this and other courts in prior cases, *see generally* Mot. to Dismiss[3]—it would be particularly prejudicial to require Respondents to engage in discovery before those arguments are resolved. *See Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015) ("It is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." (quoting *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 37 (D.D.C. 2004)); *Chavous v. Dist. of Columbia Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (in such circumstances, forestalling discovery "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.").

### B. The Discovery Sought is Outside the Scope of the Amended Case Management Order that is Typically Entered in These Cases.

Even if Petitioner's claims to "other relief" were not subject to summary dismissal, the discovery sought would be outside the bounds of the Amended Case Management Order ("CMO")

---

*what the problem is* so that it might be resolved more expeditiously." Mot. for Discovery 2-3 (emphasis added). In other words, Petitioner tacitly admits that his petition is but a springboard to a fishing expedition into a process that Congress has, for good reason, committed to the Executive Branch. *See* Resp. 9-13. It is also further evidence why Respondents' Motion to Dismiss, ECF No. 22, should be granted.

[3] With respect to Count IV, for example, this Court has already rejected *precisely* that claim. *See* Mot. to Dismiss 11-12 (recounting that the Court rejected Petitioner's argument that Section 1034 of the FY2016 NDAA is an unconstitutional bill of attainder, *Paracha I*, 194 F. Supp. 3d 7, 9-11 (D.D.C. 2016), and that the Court's decision was affirmed by the Court of Appeals, 697 F. App'x 703 (2017) (per curiam)).

entered in Guantanamo *habeas* cases, including *Paracha I*.[4] The Amended CMO reflects that discovery in Guantanamo *habeas* cases is more circumscribed than in typical civil discovery. *Compare Harris v. Nelson*, 394 U.S. 286, 293-98 (1969) (rejecting "broad-ranging" civil discovery for habeas petitions) *and Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (good cause required for discovery under Habeas Rule 6) *with* Fed. R. Civ. P. 26(b)(1) (allowing parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").

1. **The scope of discovery.**

The Amended CMO, in addition to providing for certain automatic disclosures, authorizes a petitioner to seek "limited discovery," but only under certain restricted conditions and only "for good cause."[5] Am. CMO § I.E.2. Specifically, a petitioner's request must:

> (1) be narrowly tailored, not open-ended;
>
> (2) specify the discovery sought;
>
> (3) explain why the request, if granted, would be likely to produce evidence that demonstrates that the petitioner's detention is unlawful; and

---

[4] The Amended CMO traces its lineage at least to a 2008 order from Judge Hogan, to whom most Guantanamo *habeas* cases were initially assigned for coordination of common case-management issues, such as the scope of discovery. *See* Order, *In re: Guantanamo Bay Detainee Lit.*, No. 08-mc-0442-TFH, ECF No. 940 (D.D.C. Nov. 6, 2008); *see also* Am. Order, *In re: Guantanamo Bay Detainee Lit.*, No. 08-mc-0442-TFH (D.D.C. Dec. 16, 2008), ECF No. 1315 (the "Am. CMO").

[5] The Amended CMO requires automatic disclosure of information that "tends materially to undermine the information presented to support the government's justification for detaining the petitioner," Am. CMO § 1.D.1, and certain information relied upon to justify detention, *id*. § 1.E.1. None of Petitioner's discovery requests falls into these categories. The information supporting the legality of Mr. Paracha's detention was presented in *Paracha I* and largely incorporated into the Court's prior opinion, *Paracha I*, 453 F. Supp. 3d 168. None of the proposed discovery goes to whether Mr. Paracha provided substantial support to the Taliban or Al Qaeda as concluded by the Court, or whether either of his two *habeas* claims (Counts I and II) has merit. Further, none of the information sought—whether documents, objects, or statements—is relied on by the government to justify the legality of Petitioner's detention.

>(4) explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government.

*Id.* When it entered the Amended CMO in *Paracha I*, this Court altered slightly the fourth factor:

> [I]t is FURTHER ORDERED that the parties shall construe Section 1.E.2 of the CMO as follows: If the petitioner satisfies the first three prongs of Section 1.E.2, the petitioner will be presumed to have met the fourth prong of Section 1.E.2 unless the government rebuts that presumption by offering specific facts explaining how petitioner's discovery request, if granted, will place an undue burden on the government. Generalized objections will not suffice to rebut the presumption in favor of the petitioner.

Order, *Paracha I*, ECF No. 308.

Under Section I.E.2, Petitioner must show—not merely assert—that his targeted request will bear fruit. *Cf. Lave v. Dretke*, 416 F.3d 372, 381 (5th Cir. 2005) ("Conclusional allegations are insufficient to warrant discovery; the petitioner must set forth specific allegations of fact.") (internal quotation marks omitted); *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (holding that "[c]onclusory allegations are not enough to warrant discovery" in habeas proceedings).

## 2. Petitioner's requests exceed this scope.

Petitioner's proposed discovery would be inappropriate under Section I.E.2's "limited discovery" provision and is otherwise improper. For starters, many of the requests are not "narrowly tailored." *Id.* § 1.E.2(1). For example, Petitioner seeks *all* names and contact information for *all* employees at the Department of State *or* the Department of Defense who are "assigned to work on" Petitioner's release, or on drafting a notice to Congress, or on negotiating with the government of Pakistan for Mr. Paracha's release." Mot. for Discovery, Ex. 3 (Topics 7-10). While these topics are inappropriate for a host of other reasons, they are overbroad because Petitioner's counsel has not shown—nor could he show—a need to contact *every* government employee working on these matters in order to achieve his objective.

More importantly, Petitioner never explains "why the request[s], if granted, would be likely

to produce evidence that demonstrates *that the petitioner's detention is unlawful.*" Am. CMO § 1.E.2(3) (emphasis added). Again, none of the proposed discovery informs whether Petitioner was part of, or substantially supported al-Qaeda or an associated force. Nor would any of the proposed discovery support the "core claim" in Mr. Paracha's second petition: that the government's detention authority has since expired. Mot. for Discovery 3. Instead, his proposed discovery is all aimed at securing "other relief," namely expediting (from Petitioner's perspective) his transfer pursuant to the PRB's decision.[6]

Additionally, many of the topics of Petitioner's requested discovery are patently irrelevant to Petitioner's habeas claims or otherwise inappropriate. For example, Topics 5 and 6 seek discovery into the circumstances under which the government released Mr. Paracha's son, Uzair Paracha, from the custody of the Bureau of Prisons in connection with his serving a criminal sentence. But Uzair Paracha was not detained at Guantanamo Bay, or under the law of war, so the circumstances of his release are irrelevant to Petitioner's situation, which triggers NDAA requirements inapplicable to his son's transfer. *See* Resp. 10-14. Similarly, contact information for Immigration and Customs Enforcement ("ICE") personnel is irrelevant, given that law-of-war detainees such as Petitioner are in the custody of the Department of Defense, which handles their transfers. *See* FY2022 NDAA, Pub. L. No. 117-81, § 1033, 135 Stat. 1541, 1901 (extending until December 31, 2022, prior NDAAs' constraints "on use of funds for transfer or release of individuals detained at United States Naval Station, Guantanamo Bay, Cuba, to the United States"); FY2016 NDAA, Pub. L. No. 114-92, § 1034, 129 Stat. 726, 969-71 (prohibiting the use of funds to transfer Guantanamo detainees abroad, absent certain national-security-related certifications by the Secretary of Defense at least 30 days prior to transfer) (codified at 10 U.S.C.

---

[6] This would include Petitioner's requests for information related to his passport and belongings, allegedly taken from him upon capture, which also are matters not properly cognizable in *habeas*. *See Ameziane v. Obama*, 58 F. Supp. 3d 99 (D.D.C. 2014) (district court lacked jurisdiction to adjudicate claim for return of Guantanamo detainee's money seized upon his capture).

7

§ 801 (Note)).[7] Accordingly, the ten proposed topics fall categorically outside the "limited discovery" available through Amended CMO § 1.E.2.

Finally, although Petitioner has *not* satisfied the first three prongs of Section 1.E.2, the government could easily satisfy the fourth—*i.e.*, show here that the discovery would "unfairly disrupt[] or unduly burden[] the government." Am. CMO § 1.E.2(4). As noted above, Petitioner's counsel seeks the names and contact information of every government employee who is currently working towards Mr. Paracha's transfer.[8] *See* Mot. for Discovery, Ex. 3 (Topics 7-10). That can only be so that counsel can pry into the delicate diplomatic and national-security negotiations entrusted to the Executive—interrogating or harassing those employees about their progress, any potential obstacles to the transfer, various means of transferring Petitioner abroad, *etc*.[9] Respondents wish to spare their employees, who are working diligently to effect Mr. Paracha's transfer, from such intrusions and interruptions. That concern is heightened here, because "it is for the political branches, not the courts, to determine whether a foreign country is appropriate for

---

[7] Unlike many NDAA provisions, Section 1034 of the FY2016 NDAA was not limited to the term in which funds were appropriated, but rather codified permanently at 10 U.S.C. § 801 (Note).

[8] As Respondents noted in their first Response, Section 4 of Executive Order 13,567 requires "that vigorous efforts are undertaken to identify a suitable transfer location for any such detainee [determined eligible for transfer], outside of the United States, consistent with the national security and foreign policy interests of the United States and the [*nonrefoulment*] commitment set forth in section 2242(a) of the Foreign Affairs Reform and Restructuring Act of 1998 (Public Law 105–277)." 76 Fed. Reg. at 13,279. Respondents reaffirm here that those efforts are continuing.

[9] Petitioner's counsel has already sent numerous such inquiries and suggestions to the undersigned counsel and to various of Respondents' employees. For example, counsel has asked why his client cannot be brought to Jamaica to take a commercial flight to Karachi, or why he cannot be brought to the United States for a "secure handoff" to ICE, who could then simply *deport* him to Pakistan. Most recently, counsel suggested that "the Office of Removal and Enforcement (ORE) of the Department of Homeland Security could divert to GTMO a flight of deportees headed for Pakistan, and could pick up Paracha there." Respondents can only assume that, if Petitioner's counsel obtained the contact information of many more federal employees, they would likewise be inundated with these unhelpful suggestions, all of which are contrary to law. *See* FY2022 NDAA, Pub. L. No. 117-81, § 1033; FY2016 NDAA, Pub. L. No. 114-92, § 1034, 129 Stat. at 969-71 (codified at 10 U.S.C. § 801 (Note)).

8

resettlement." *Kiyemba v. Obama*, 605 F.3d 1046, 1048 (D.C. Cir. 2010) (per curiam).

The Amended CMO ensures that discovery in *habeas* proceedings is "both prudent and incremental." *Hamdi*, 542 U.S. 507, 539 (2004). Petitioner's proposals are neither. Even if Petitioner were seeking discovery in support of claims that were not categorically barred, his claims would be outside the scope of discovery authorized by the Amended CMO, and should therefore be denied on that basis.

### C. Petitioner's Renewed Motion for Discovery Should be Denied.

Before Respondents' opposition to his motion for discovery was even due, Petitioner filed a Renewed Motion for Discovery, asking the Court to order the 10 categories of discovery Petitioner seeks, essentially attempting to justify the discovery by arguing the merits of his claims. None of the arguments raised in the Renewed Motion for Discovery, however, justify the imposition of the discovery sought.

Petitioner begins by mischaracterizing, as he has throughout this litigation, Respondents' position: "The essence of. [*sic*] the government's position, and its essential fallacy, is to conceive of liability to imprisonment as a status, immutable once determined." Ren. Mot. for Discovery 2.[10] Respondents have never suggested anything of the sort, but for the avoidance of doubt: Mr. Paracha is not being detained because of any immutable status. As this Court held, he is legally detainable because he substantially supported the Taliban, *Paracha I*, 453 F. Supp. 3d at 229-30, and al Qaeda, *id.* at 230-36.[11] That is not an immutable status, however; Respondents acknowledge that their authority to detain Mr. Paracha is cabined by "the end of the hostilities authorized by the

---

[10] Petitioner repeats this mischaracterization throughout the renewed motion. *E.g.*, *id.* at 3 ("The government's October 25, 2021, response relies on the assumption that detention once lawful remains lawful.").

[11] While the Court only found that Mr. Paracha was a substantial supporter of the Taliban and Al Qaeda, and therefore did not reach the question whether Mr. Paracha was also part of those forces, *Paracha I*, 453 F. Supp. 3d at 172, Respondents maintain that he is detainable under the "part of" prong of detention standard as well.

[2001] Authorization for Use of Military Force[, Pub. L. No. 107-40, 115 Stat. 224]." FY2012 NDAA, Pub. L. No. 112-81, § 1021, 125 Stat. 1298, 1562. The Parties simply disagree over whether such hostilities have ended. Petitioner's straw-man argument begs that question and, in any event, does not serve to justify discovery in support of Petitioner's claims for "other relief," as explained *supra*.

Petitioner continues by mischaracterizing, as he has throughout this litigation, the nature of the PRB's decision, suggesting that it "abrogate[s] entirely" Respondents' detention authority over him. Ren. Mot. for Discovery 3. Respondents addressed that claim in their response to the Petition and, contemporary with this opposition, Respondents have filed their response to Petitioner's supplemental petition. *See* Resp. to Supp. Pet. 38-41. As those filings explain, Petitioner is wrong: the PRB does *not* determine the legality of detention, which is a separate (and the only) question presented in a *habeas* petition. To avoid unnecessary duplication in briefing, Respondents incorporate those arguments here. *See id*. Petitioner's misunderstanding of the PRB's decision does not justify discovery in support of his claims for "other relief," as explained *supra*.

Finally, Petitioner suggests that the "*Kiyemba* trilogy. . . sheds little or no light on habeas remedies in general." Ren. Mot. for Discovery 10-11. To the contrary, and as specifically relevant here, the *Kiyemba* cases held: (1) that courts only have jurisdiction over "proper claim[s] for habeas relief," *Kiyemba v. Obama*, 561 F.3d 509, 513 (D.C. Cir. 2009) ("*Kiyemba II*"); (2) that "it is for the political branches, not the courts, to determine whether a foreign country is appropriate for resettlement," *Kiyemba v. Obama*, 605 F.3d 1046, 1048 (D.C. Cir. 2010) (per curiam) ("*Kiyemba III*"); and (3) that it is "the exclusive power of the political branches to decide which aliens may, and which aliens may not, enter the United States, and on what terms." *Kiyemba III*, 605 F.3d at 1048. Thus, the Court need not proceed to any "fact-specific" inquiry. Ren. Mot. for Discovery 11. Counts III-VI are categorically barred, by statute and by D.C. Circuit precedent, *see generally*

Mot. to Dismiss, and any discovery sought in support of those claims should be denied.

## II. PETITIONER'S MOTION FOR A MORE DEFINITE STATEMENT SHOULD BE DENIED.

Petitioner's Motion for More Definite Statement consists of three parts. First, Petitioner opposed Respondents' suggestion that the Court hold in abeyance Counts I and II until the Court of Appeals resolved Petitioner's motion to remand *Paracha I* for consideration of those claims. Mot. for Statement 1-3. That argument became moot once the Court granted Respondents' request to hold the case in abeyance. *See* Order, ECF No. 14. Second, he argued that any *res judicata* arguments (which Respondents did not raise) were "premature," such that the Court could proceed in *Paracha II* without awaiting remand in *Paracha I*. *Id*. at 3-5. That argument likewise became moot once the Court of Appeals granted the limited remand motion in *Paracha I* and Petitioner's two cases were consolidated. *See* Order, ECF No. 19. Third, he argues that "further delay would negate the essential nature of habeas corpus." *Id*. at 5-6. As explained below, that argument is misplaced.

Petitioner argues that the Respondents' Response to the Petition was long on the law but short on facts. Mot. for Statement 6. That is simply not true. *See* Resp. 5-7 ("Petitioner Remains Lawfully Detained"). The *fact* is that this Court concluded that Petitioner substantially supported the Taliban and Al-Qaeda, and is therefore detainable under the 2001 Authorization for Use of Military Force. Resp. 5; Resp. to Supp. Pet. 4. The *fact* is that hostilities within the scope of the AUMF and the FY2012 NDAA continue. Resp. 5-6; Resp. to Supp. Pet. 6-37. The *fact* is that the PRB's decision does not address the legality of Petitioner's detention, and therefore supplies no basis on which to grant a writ of *habeas corpus*. Resp. 6-7; Resp. to Supp. Pet. 38-40. These are not "academic exercises," Mot. for Statement 6, but inescapable conclusions barring the relief Petitioner seeks. He has no answer to them.

Contrary to Petitioner's arguments, the Response explained precisely why Petitioner

11

remains legally detained. No more definite statement was required, and Petitioner's motion should be denied on its merits. However, Respondents have since responded to the supplemental petition for *habeas corpus*, addressing in greater detail the alleged end of hostilities and the PRB's determination. *See generally* Resp. to Supp. Pet. Therefore, at a minimum, the Motion for More Definite Statement should be denied without prejudice to re-filing if Petitioner finds the latest response lacking in detail.

## CONCLUSION

For the foregoing reasons, Petitioner's motions, ECF Nos. 13, 14, and 15, should be denied.

Dated: January 14, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

TERRY M. HENRY
Assistant Branch Director

DANIEL M. BARISH
Senior Trial Counsel

*/s/ Jason C. Lynch*
JASON C. LYNCH (D.C. Bar No. 1016319)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 11214
Washington, DC 20005
Tel: (202) 514-1359
Email: Jason.Lynch@usdoj.gov