**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SAIFULLAH PARACHA, | ) |
| | ) |
| *Petitioner,* | ) |
| | ) |
| v. | ) Case No. 1:21-cv-2567-PLF |
| | ) |
| JOSEPH R. BIDEN, JR., *et al.*, | ) |
| | ) |
| *Respondents.* | ) |
| | ) |

## RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Local Civil Rule 65.1(c), Respondents Joseph R. Biden, Jr., Lloyd Austin III, Antony Blinken, and Lance Okamura,[1] hereby oppose Petitioner's Motion for Preliminary Injunction, ECF No. 28 ("Mot.").

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Lance Okamura has been substituted for Edward Cashman.

## TABLE OF CONTENTS

INTRODUCTION................................................................................................ 1

LEGAL STANDARD ........................................................................................ 2

ARGUMENT .................................................................................................... 3

I.    PETITIONER HAS NOT ESTABLISHED A CLEAR ENTITLEMENT TO RELIEF. .................... 3

     A.    Petitioner Has No Chance of Success on His Underlying Claims..................... 3

     B.    Petitioner Misunderstands the Words "Transfer . . . to the Custody or
         Control of" in Section 1034 of the FY2016 NDAA............................... 5

     C.    Petitioner Misunderstands the Section 1034 Certification Requirements....... 8

     D.    The FY2012 Intelligence Authorization Act Does Not Support Petitioner's
         Motion. ................................................................................. 11

II.   PETITIONER HAS NOT ESTABLISHED THE PROSPECT OF IRREPARABLE HARM............ 12

III.  PETITIONER HAS NOT ESTABLISHED THAT THE BALANCE OF EQUITIES FAVORS THE
     RELIEF HE SEEKS. .................................................................................. 13

CONCLUSION ............................................................................................... 14

## INTRODUCTION

Petitioner's motion for a preliminary injunction is but his latest effort to deflect and distract from the sole question presented in this *habeas* case: whether Petitioner is legally detained. Immediately after Respondent's initial response, ECF No. 10, Petitioner began filing meritless motions for discovery and for a more definite statement, ECF Nos. 11, 12, 13. After the case was briefly stayed, ECF No. 14, the Court ultimately entered an order prescribing deadlines to "govern future proceedings." Order 4-5, ECF No. 19.

Those proceedings are complete. Respondents filed on January 14, 2022, their Response to Petitioner's supplemental petition, ECF No. 21 ("Supp. Resp."); their motion to dismiss the Petition for "other relief" (Counts III-VI), ECF No. 22 ("MTD"); and their opposition to Petitioner's prior motions, ECF No. 23. Petitioner filed on January 21, 2022, a reply in support of his prior motions, ECF No. 26, and filed on January 28, 2022, an opposition to Respondents' motion to dismiss. On February 3, 2022, Respondents filed a reply in support of their motion to dismiss, ECF No. 27 ("MTD Reply"). In short, the case is fully briefed and ripe for decision.

Nevertheless, and more than four months after filing suit, Petitioner now seeks a "preliminary injunction." Mot. 1. But rather than preserve the *status quo* during litigation—the typical function of a preliminary injunction—Petitioner's motion would simply grant him expedited, final relief on his underlying claims. As explained below, motions for such "mandatory injunctions" are almost always denied. To obtain such relief, the movant must show clear entitlement to relief (not merely likelihood of success) or the prospect of extreme or very serious injury (not merely irreparable harm).

Petitioner can show neither. His underlying claims would not only fail ultimately on their merits, but should be dismissed at the threshold, for reasons recently explained in Respondents' motion to dismiss. His claim to irreparable harm depends upon his continued misunderstanding of the PRB process, which (as explained in Respondents' recent briefing) does *not* grant him a right

to be transferred, but rather makes him *eligible* for a discretionary transfer to a foreign country. As such, and as this Court has already held, he cannot claim *any* injury—let alone grave or serious harm—from a delay in that process.

The motion should be denied.

## LEGAL STANDARD

To obtain a preliminary injunction, the movant must establish that (1) he is "likely to succeed on the merits"; (2) he is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities" is in his "favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016); *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016). The first factor is also the "most important factor." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014); *see also Munaf v. Geren*, 553 U.S. 674, 690 (2008) ("[A] party seeking a preliminary injunction must demonstrate, among other things, 'a likelihood of success on the merits.'" (quoting *Gonzales v. O Centro Espirita Beneficente União do Vegetal*, 546 U.S. 418, 428 (2006))). Where the federal government is the opposing party, the balance-of-equities and public-interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). In all cases, a preliminary injunction "is an extraordinary . . . remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion" on every factor. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis omitted).

The "typical function of a preliminary injunction" is "to maintain the status quo." *Strait Shipbrokers Pte. Ltd. v. Blinken*, -- F. Supp. 3d. --, No. 1:21-cv-1946-BAH, 2021 WL 3566594, at *6 (D.D.C. Aug. 12, 2021) (citing *Sherley v. Sebelius*, 689 F.3d 776, 781 (D.C. Cir. 2012); *City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117, 126 (D.D.C. 2006)). But in this case, Petitioner seeks to change the *status quo*, and thus seeks a "mandatory injunction." *Id.* Such

injunctions are disfavored as "an even more extraordinary remedy" than the typical preliminary injunction, *Abdullah v. Bush*, 945 F. Supp. 2d 64, 67 (D.D.C. 2013), "especially when directed at the United States Government," *Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005); *see also Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000) ("In this Circuit, 'the power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised.'") (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969)).

Movants seeking mandatory injunctions "face 'an additional hurdle' when proving their entitlement to relief," *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 901 F. Supp. 2d 54, 56-57 (D.D.C. 2012) (quoting *King v. Leavitt*, 475 F. Supp. 2d 67, 71 (D.D.C. 2007)), and courts "exercise extreme caution in assessing" such motions, *id.* at 57. Indeed, "[a]s a rule, 'when a mandatory preliminary injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party.'" *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997) (cleaned up) (quoting *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997)).

## ARGUMENT

Petitioner cannot meet "the demanding standard for a mandatory preliminary injunction," *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 319 (D.C. Cir. 2018), and his motion should be denied.

## I.   PETITIONER HAS NOT ESTABLISHED A CLEAR ENTITLEMENT TO RELIEF.

Far from establishing clear entitlement to relief, Petitioner's motion suffers from the same legal errors that permeate his prior filings.

### A.   Petitioner Has No Chance of Success on His Underlying Claims.

The relevant question, when a movant seeks a preliminary injunction that would obtain the ultimate relief sought in the case, is whether Petitioner has shown entitlement to relief on his

"underlying claims." *Bird v. Barr*, No. 19-cv-1581-KBJ, 2020 WL 4219784, at *4 (D.D.C. July 23, 2020). He cannot seek preliminary injunctive relief based on facts or claims "not actually alleged" or that "do not relate" to his underlying claims. *Id.*

Petitioner has two underlying claims related to Section 1034 of the Fiscal Year 2016 National Defense Authorization Act ("FY2016 NDAA"), Pub. L. No. 114-92, § 1034(a)(2), 129 Stat. 726, 969, codified at 10 U.S.C. § 801 (Note) (hereinafter "Section 1034"). That section generally requires the Secretary of Defense to make certain certifications to the relevant committees of Congress before any detainee is transferred from Guantanamo Bay to a foreign country. *See generally id.* In Count III, Petitioner claims that "Respondents are obliged to facilitate Petitioner's departure from Guantanamo Bay and his return to Pakistan," and that the Court should accordingly force the Secretary of Defense to tender the Section 1034(b) certifications to Congress. Pet. ¶¶ 17-20. In Count IV, Petitioner challenges Section 1034 as an unconstitutional bill of attainder. *Id.* ¶ 21.

Respondents have recently explained why Counts III and IV should be dismissed at the threshold. Most significantly, both counts are barred by the *habeas* statute, 28 U.S.C. § 2241(e)(2). *See* MTD 2-4; MTD Reply 2-4. Petitioner also lacks a cause of action to bring Count III, *see* MTD 5-6; MTD Reply 4-5, which in any event fails for separation-of-powers reasons, *see* MTD 7-10. Petitioner lacks standing to bring Count IV, *see* MTD 11-12; MTD Reply 5-6, which fails in any event to state a plausible claim, *see* MTD 12-13.[2] Because Counts III and IV are unlikely to succeed—and, to the contrary, should clearly fail—the Court can deny out of hand any motion for

---

[2] With respect to Count IV, this Court previously held that the claim was barred by 28 U.S.C. § 2241(e)(2)—when Petitioner's same counsel brought this same claim in his previous case—*and was affirmed by the D.C. Circuit on that ground*. *See* MTD 3 (citing *Paracha v. Obama*, 194 F. Supp. 3d 7, 11 (D.D.C. 2016), *affirmed*, 697 F. App'x 703 (2017) (per curiam)). This Court also ruled that Petitioner lacked standing to bring this claim, *id.* at 9-11, but the Court of Appeals affirmed on the alternate, § 2241(e)(2) ground.

preliminary injunctive relief with respect to those claims.

Petitioner muddles the first preliminary-injunction factor by suggesting that "Under [factor] (1), we are virtually certain that Petitioner will eventually be released, the only question is when." Mot. 6. That is *not* his underlying claim with respect to Section 1034. He seeks to force the Section 1034 certifications by court order (Count III) or to invalidate the statute as unconstitutional (Count IV). Neither of those seeks "release[]," Mot. 6, or a writ of *habeas corpus*—which is, incidentally, why they should be dismissed.

But it is worth noting that Petitioner's logic is also self-defeating: even if success on Count III or IV resulted in a writ of *habeas corpus*, that would render the certification requirements of Section 1034 inapplicable in the first place. *See* FY2016 NDAA, § 1034(a)(2) (excepting from the certification requirement "any action taken by the Secretary [of Defense] to transfer any individual detained at Guantanamo to effectuate an order affecting the disposition of the individual that is issued by a court or competent tribunal of the United States having lawful jurisdiction."). In short, once a court has granted a writ of *habeas corpus*, the Section 1034 requirements no longer apply to transferring that detainee.

Thus, Petitioner is wrong that Section 1034 poses "obstacles" that "need to be removed *pendent lite* so that [Petitioner] may be released promptly after the other obstacles are out of the way." Mot. 2. If Petitioner ever obtained the writ that he seeks in this case—*i.e.*, got the "other" obstacles "out of the way"—then Section 1034 would no longer pose any obstacle. Until he obtains such a writ, however, he remains legally detained, and Section 1034 applies to his transfer.

**B.      Petitioner Misunderstands the Words "Transfer . . . to the Custody or Control of" in Section 1034 of the FY2016 NDAA.**

In Section I of his motion for preliminary injunction, Petitioner essentially argues that he is due to be "released," not "transferred," so Section 1034 does not apply to him.

This is a novel distinction on Petitioner's part. In his initial pleading, he argued that Section

1034 "require[s] that the Secretary of Defense give notice to various congressional committees at least thirty days before anyone is *released* from the prison at Guantanamo." Pet. ¶ 19 (emphasis added).[3] And Petitioner's new "transfer" vs. "release" argument remains confusing, to say the least. *See* Mot. 7-9. But as Respondents have recently explained in detail, Petitioner is simply wrong: the Periodic Review Board authorizes detainees for "transfer," *see* MTD Reply 2-3 (examining the language of Executive Order 13,567), and Section 1034 of the FY2016 NDAA likewise pertains to any "transfer," *see* FY2016 NDAA, § 1034(a)(1). Respondents respectfully suggest that the Court's analysis can start and stop here: Section 1034's certification requirements apply to Petitioner's transfer out of United States custody.

Petitioner appears to argue that, because the PRB applied the standard in Executive Order 13,567 and found that "[c]ontinued law of war detention" of Petitioner is no longer necessary to protect against a significant threat to the security of the United States, Petitioner is being "released" and not "transferred." Mot. 8.[4] Petitioner seems to reason that, unless a detainee is being transferred for further detention in the transferee country, Section 1034's certification requirements do not apply. *Id.* But the United States need not transfer an individual abroad for further *detention* in order

---

[3] Indeed, Petitioner's latest position is irreconcilable with having brought Counts III and IV in the first place. If Section 1034 did not apply to him, because he was not being "transferred," then he would have no cause to force that certification (Count III) or to challenge the statute as unconstitutional (Count IV). Nowhere in his pleading does Petitioner argue, even in the alternative, that Section 1034 does not apply to him because he is being "released" and not "transferred." Of course, as explained above, Petitioner is eligible for "transfer," and not "release," as Petitioner apparently interprets the latter term.

[4] Per the governing policy, "a continuing significant threat to the security of the United States" is "a threat…that cannot be sufficiently mitigated through feasible and appropriate security measures associated with a transfer of the detainee." *See* Policy Memorandum, "Implementing Guidelines for Periodic Review of Detainees Held at Guantanamo Bay per Executive Order 13567" (Feb. 15, 2019), *available at* https://www.prs.mil/Portals/60/Documents/Governance/POLICY%20MEMORANDUM%20IMPLEMENTING%20GUIDELINES%20FOR%20PERIODIC%20REVIEW%20OF%20DETAINEES%20HELD%20AT%20GUANTANAMO%20BAY%20.pdf.

for that process to be a "transfer." Section 1034(b)(2) requires certification that the government of the country to which the detainee "is to be *transferred*" maintains control over any facility at which the detainee will be detained, "*if* the individual is to be housed in a detention facility." FY2016 NDAA, § 1034(b)(2) (emphasis added). Clearly, then, the statute refers to the process as a "transfer" regardless of whether the detainee will be further detained in the foreign country—a decision that lies with that receiving country. The statute is thus consistent with the practical and legal reality that, whenever the United States transfers someone from its custody to a foreign country, that person is necessarily being transferred to that country's custody or control. The notion that a detainee might simply be set free by the United States into the territory of another sovereign country, without first being transferred to that country's custody or control, is fanciful.

Petitioner also argues that his "claim to release" is not founded on Executive Order 13,567, but "on habeas corpus, the law of war, and *Boumediene v. Bush*, 553 U.S. 723 (2008)." Mot. 8. For the record, Petitioner *has* previously grounded his right in Executive Order 13,567.[5] But more importantly, Petitioner is simply wrong that the PRB determination has any effect on the legality of his detention. *See generally* Supp. Resp. 38-41.

Finally, to address Petitioner's plea for "an order in the alternative," Respondents do *not* concede that certification under Section 1034 "is not a precondition to [Petitioner's] going to Pakistan." Mot. 9. The PRB has determined that Mr. Paracha is eligible for *transfer* from United States custody, and that is precisely what Section 1034 governs. Petitioner's arguments all stem from his misunderstanding to the contrary, and his motion should be denied accordingly.

---

[5] *See* Compl. ¶ 16 (Count II) ("The May 13, 2021, finding and action of the Periodic Review Board declaring that the 'continuing law of war detention is no longer necessary" in the case of Petitioner was the action of the President and the executive branch terminating all authority to hold Petitioner thereafter. *That finding and action is binding on this honorable Court*.") (emphasis added). He has also acknowledged that the PRB's decision is rendered "pursuant to Executive Order 13567." *Id.* ¶ 11. Thus, to be clear, Petitioner *is* before this Court arguing that a writ of *habeas corpus* should issue because of an Executive Order.

C.      **Petitioner Misunderstands the Section 1034 Certification Requirements.**

Petitioner alternatively asks in Section II of his Motion that, if Section 1034 applies, the Respondents should be ordered *now* to provide the certifications and reports required by that law. Mot. 9-14. Once again, Petitioner advances flawed legal arguments that could, in any event, have been raised long before now.

Section 1034 is addressed at length in Respondents' recent Motion to Dismiss, pages 7-10. In summary, forcing the Executive to tender the Section 1034 certifications would raise serious separation-of-powers questions by compelling discretionary acts that have long been understood to fall within the province of the political branches. *Id.* Petitioner's section-by-section "examin[ation]" of Section 1034's requirements, *see* Mot. 10-14, only reinforces Respondents' arguments.

Beginning with Section 1034(b)(1), Petitioner elides the distinction between the standard for continued detention applied by the PRB (whether continued detention is necessary to protect against a significant threat to the security of the United States) and the certification required by Section 1034 (that transferring the detainee "is in the national security interests of the United States"). The two are not the same, and Petitioner's assertion that the Secretary of Defense can simply rubber-stamp a Section 1034(b) certification whenever there has been a final PRB decision, *see* Mot. 10 ("That the transfer is in the national security interests of the United States has already been determined by the PRB . . .") is thus plainly wrong.

Moreover, it is for the Secretary of Defense, not Petitioner's counsel—or, respectfully, for the Court—to make the inherently subjective and predictive assessments and certifications called for under Section 1034(b), including what "steps" are "appropriate" to substantially mitigate the risk that a transferred detainee might "reengage in terrorist activity or otherwise threaten the United States or its allies or interests," FY2016, § 1034(b)(2)(C), and the other factors addressed in the statute. These assessments and certifications all depend on information and subject-matter

expertise that is uniquely possessed by the Executive Branch.

Regarding Section 1034(b)(4), in particular, Petitioner is in no position to dictate an "intelligence assessment, in classified or unclassified form, of the capacity, willingness, and past practices (if applicable) of the foreign country" or countries presently under consideration. Nor does Petitioner have any basis for positing that such an assessment "should have been available long ago." Mot. 12. These are, again, decisions that are properly committed by Congress to the Executive.

Petitioner argues that, because Section 1034(d) (addressing the Secretary's consideration of a detainee's cooperation) uses the term "released," Congress was consciously differentiating between "transfers" and "releases," thereby supporting Petitioner's argument that Section 1034's certification requirements do not apply to him. Mot. 12-13. In fact, it proves the opposite. Recall that Section 1034(b) requires certification by the Secretary of Defense that "the *transfer* concerned is in the national interests of the United States," and that "the government of the foreign country . . . to which the individual detained at Guantanamo concerned is to be *transferred*" is neither a state sponsor of terrorism nor a foreign terrorist organization. FY2016, § 1034(b)((2)(A) (emphasis added). Then in Section 1034(d), the statute allows the Secretary of Defense to consider a detainee's past or future cooperation when assessing whether the detainee may engage in further terrorist activity "if *released*," as the Secretary considers "making a certification *under subsection [1034](b)*." *Id.* § 1034(d) (emphasis added). For ease of reference, Respondents produce the relevant sections below:

> (b) CERTIFICATION.—A certification described in this
> subsection is a written certification made by the Secretary that—
>     (1) the *transfer* concerned is in the national security
>     interests of the United States;
> . . .
> (d) RECORD OF COOPERATION.—In assessing the risk that an
> individual detained at Guantanamo will engage in terrorist activity
> or other actions that could affect the national security of the United

> States if *released* for the purpose of making a *certification under subsection (b)*, the Secretary may give favorable consideration to any such individual . . . .

FY2016 NDAA, §§ 1034(b), (d) (emphasis added).

Whether Section 1034(d) is using "release" interchangeably with "transfer" or (as Petitioner suggests) is using  "release" to refer to "the likelihood that transferred prisoners will sooner or later be released by the authority to whom they are transferred," Mot. 13, does not matter. Either way, the section refers to "a certification *under subsection [1034](b)*," which is a certification that, among other things, the foreign country to which the detainee "is to be *transferred*" controls "each detention facility in which the individual is to be detained *if* the individual is to be housed in a detention facility." FY2016, § 1034(b)(2)(B) (emphasis added). Thus, the word "transfer" in Section 1034(b) is used to cover both instances in which the detainee will, and will not, be detained after transfer. In both situations, the Secretary of Defense must make the Section 1034(b) certifications prior to said transfer.

Finally, Section 1034(e) only reinforces Respondents' arguments heretofore. That section requires the Secretary of Defense to report *both* the "Periodic Review Board findings relating to the individual" *and* a "detailed statement of the basis for the transfer of the individual," along with an "explanation of why the transfer of the individual is in the national security interests of the United States," among other things. *See* FY2016 NDAA, § 1034(e). This further dispels Petitioner's argument, addressed above, that the certification required by Section 1034(b)(1) is a *fait accompli* whenever the PRB has rendered a decision. *See* Mot. 11 ("That the transfer is in the national security interests of the United States has already been determined by the PRB and already endorsed by the Secretary of Defense as a member of the Review Committee."). Congress clearly disagrees. Moreover, the PRB's determination necessarily *precedes* the diplomatic engagements necessary to effect a repatriation or resettlement, which must be complete before the Secretary of Defense can make the certifications required by Section 1034—namely, that the ultimate transfer

to a receiving country is in the interests of national security. *See* Exec. Order No. 13,567, § 4, 76 Fed. Reg. at 13,279 (vigorous efforts to identify a suitable transfer location to be undertaken *after* a PRB determination that continued detention no longer necessary).

Petitioner has strained mightily to contort a straightforward statute into a verbal labyrinth of "transfers" and "releases," while at the same time suggesting that Section 1034's requirements are so straightforward that this Court can compel them as a mere "ministerial duty" with "no room for discretion." Mot. 14. Petitioner is wrong on every point, and his motion should be denied accordingly.

**D.    The FY2012 Intelligence Authorization Act Does Not Support Petitioner's Motion.**

For the first time in this case, Petitioner addresses the Intelligence Authorization Act for Fiscal Year 2012, Pub. L. No. 112-87, 125 Stat. 1876. Yet he says he "has no quarrel" with that law. Mot. 14. He only suggests that "Respondents are greatly negligent if this notice has not already been sent to Congress." *Id.* at 15. Though he is not express in his actual motion, Petitioner's "suggested injunction" asks the Court to order Respondents to provide the notice required by Section 308 of Pub. L. No. 112-87.

This newfound argument is not entirely clear, but in no way supports preliminary injunctive relief. First, Petitioner has no underlying claim related to Pub. L. No. 112-87, *see generally* Pet., so he cannot seek preliminary injunctive relief on such a claim. *See Bird*, 2020 WL 4219784, at *4. Second, any claim to compel notice under Pub. L. No. 112-87, § 308, would fail for the same reasons that bar Count III's attempt to force the Section 1034(b) certifications: the claim would be barred by 28 U.S.C. § 2241(e)(2) and separation of powers under the Constitution. Just as the Court should not force the Secretary of Defense to certify that transferring Mr. Paracha is in the national-security interests of the United States—which is for the Secretary alone to decide—the Court

should not force the Secretary of State[6] to expedite submission under Section 308 of "[t]he terms of any agreement with the country" to which Mr. Paracha may be transferred, which would first require that those commitments be negotiated and reached with the foreign government.

## II.   PETITIONER HAS NOT ESTABLISHED THE PROSPECT OF IRREPARABLE HARM.

Petitioner devotes exactly one sentence to substantiating his claim to irreparable harm: "If the government believes it is obliged to hold Petitioner for thirty days after it has given notice to the committees of Congress, and if it withholds that notice indefinitely, then Petitioner's imprisonment can be continued indefinitely, the harm of which to a 74-year-old man in poor health needs no elaboration." Mot. 6.

This argument is deeply flawed. As he has throughout this litigation, Petitioner attributes to Respondents a position that they have never taken. *See* Opp'n 9 ("Respondents have never suggested anything of the sort, but for the avoidance of doubt: Mr. Paracha is not being detained because of any immutable status."), ECF No. 23. Respondents have never suggested that they would, or claimed that they could, continue to detain Petitioner "indefinitely." Because his entire argument depends on this straw man, the argument can be denied summarily.

But Petitioner is also wrong that he suffers any cognizable harm from further delay in submitting the Section 1034 certifications. Because he remains legally detained under the law of war, Petitioner has no *right* to be transferred. Rather, he has been deemed *eligible* for transfer pursuant to the expressly *discretionary* process established by Executive Order 13,567. As such, a delay in that process does not deprive Petitioner of any legal right, which is precisely why this Court held that he lacks standing to challenge Section 1034 as unconstitutional. *See Paracha*, 194 F. Supp. 3d at 10 ("[B]ecause no court has issued a writ of habeas corpus, petitioner has no 'legally

---

[6] The President has delegated to the Secretary of State, in consultation with the Secretary of Defense, the function of providing to Congress the information required of Section 308. *See* Presidential Memorandum of January 27, 2012, 77 Fed. Reg. 11,371 (Feb. 24, 2012).

protected interest' in being transferred or released and therefore cannot establish an injury in fact, as required by the first element of the test for standing."). If Petitioner cannot satisfy the bare minimum for Article III standing—a concrete injury in fact—then surely he cannot demonstrate the grave or serious injury necessary to obtain a mandatory injunction. *Cf. Dallas Safari Club v. Bernhardt*, 453 F. Supp. 3d 391, 399 (D.D.C. 2020) (denying two plaintiffs' claims to irreparable harm because, "[a]s an initial matter," they lacked standing).

Even if Petitioner had demonstrated a likelihood of success on the merits, he has not established the threat of irreparable harm, and his motion can be denied for that reason alone. *Hinton v. Dist. of Columbia*, -- F. Supp. 3d --, No. 1:21-cv-1295-JDB, 2021 WL 4476775, at *17 (D.D.C. Sept. 30, 2021) (collecting cases).

## III. PETITIONER HAS NOT ESTABLISHED THAT THE BALANCE OF EQUITIES FAVORS THE RELIEF HE SEEKS.

Where the federal government is the opposing party, the final two factors (balance of equities and the public interest) merge. *See Nken*, 556 U.S. at 435. Petitioner devotes a meager sentence to carrying his burden on these two factors: "asking Respondents to decide what their statutory duty to Congress is and asking them to carry it out promptly clearly involves no harm to anyone and is very much in the public interest." Mot. 6. Petitioner is correct that Congress has already struck a balance among the relevant interests; he simply misreads the statute.

Congress has decided that, at least 30 days before the Executive transfers any detainee from Guantanamo Bay to a foreign country, the Secretary of Defense should make certain certifications to the relevant congressional committees. FY2016 NDAA, § 1034. Importantly, Congress has accounted for the detainees' interests by eliminating this requirement whenever a court rules that the detainee is not legally detained. *Id.* § 1034(a)(2). But where the detainee is still legally detained—as Petitioner is here—Congress wants certain assurances. Congress wants to know, not just that continued law of war detention is no longer necessary, but that transfer is in the national-

security interests of the United States and that steps will be taken to substantially mitigate any risk that the detainee could reengage in terrorist activity or threaten the United States, its allies, or its interests. *Id.* § 1034(b)(1) and (b)(2)(C). And Congress wants more than a rote stamp of approval; the Secretary of Defense must submit a "detailed statement," an "explanation," a "description of actions," assessments, summaries, etc. *See generally id.* § 1034(e). Notably, these are all *in addition to* the PRB findings with respect to the detainee. *Id.* § 1034(e)(4).

Petitioner is in no position to demand the Section 1034 certifications or reports, or to dictate the timetable on which they are submitted. Congress has determined that the public interest is best served by committing these tasks to the Executive Branch. Petitioner's motion would upset that balance and should therefore be denied.

## CONCLUSION

Petitioner's latest motion has no more merit than its predecessors. His incessant attempts have failed to distract from the fact that he remains legally detained. The motion for preliminary injunction should be denied.

Dated: February 16, 2022                          Respectfully submitted,

                                                  BRIAN M. BOYNTON
                                                  Acting Assistant Attorney General

                                                  ALEXANDER K. HAAS
                                                  Branch Director

                                                  TERRY M. HENRY
                                                  Assistant Branch Director

                                                  DANIEL M. BARISH
                                                  Senior Trial Counsel

                                                  */s/ Jason C. Lynch*
                                                  JASON C. LYNCH (D.C. Bar No. 1016319)
                                                  Trial Attorney
                                                  United States Department of Justice

Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 11214
Washington, DC 20005
Tel: (202) 514-1359
Email: Jason.Lynch@usdoj.gov